(16 Misc. Rep. 625)

METROPOLITAN LIFE INS. CO. v. SCHAEFER et al.

(Onondaga County Court. April, 1896.)

1. EVIDENCE—ADMISSIONS.
   The effect, as an admission, of a statement in making which defendant participated, is not conclusive on defendant, where it does not appear that he understood the statement.

2. SAME—CONCLUSIONS OF WITNESS.
   In an action to recover money alleged to have been received by defendant as a collector for plaintiff, defendant may testify that he turned over to plaintiff all the money collected, as such testimony, though a conclusion, necessarily involves the facts.

Appeal from municipal court of Syracuse.

Action by the Metropolitan Life Insurance Company against Ambrose Schaefer and Jacob Gilcher to recover $34.05, alleged to be due on a bond given by defendant Schaefer, with defendant Gilcher as surety, to secure the performance by defendant Schaefer of his duties as agent of plaintiff. From a judgment entered on the verdict in favor of defendants, plaintiff appeals. Affirmed.

William S. Jenney, for appellant.

Alexander E. Oberlander, for respondents.

ROSS, J. The bond upon which this action is brought contains the following provisions:

"The total amount of weekly premiums in the life policy register, after deducting the total weekly premiums in the lapsed policy register, are to be

debited to my account on Monday of each and every week. This amount shall be known as the 'Collectible Debit,' as the same is hereinafter made a basis of my compensation. This collectible debit shall be considered as having been absolutely received by me for the company, and the company shall not be required to prove that I actually received the premiums, or any of them. This clause is not to be taken as a waiver of or as affecting any rights of the company otherwise secured by this agreement. I agree that the condition of my account with the company, either before or after the termination of my employment by the company, shall be ascertained and determined by an inspection of my weekly accounts or my ledger, and by my collection book or the premium receipt books of the policy holders included in my debit. Such inspection may be made at the direction of the company, at any time, with or without notice to me, and by any person authorized by the company to make it; and when made, whether before or after the termination of my agency, and whether I shall be present at the inspection or not, I agree that the actual condition of my account with the company shall be determined by the report of the inspection as it shall be made by the authorized person aforesaid, as he shall compute the same from his entries in the inspection book. And I hereby give such employé who shall inspect my agency as aforesaid full power and authority to compute the sum due by me to the company as it shall appear upon such inspection by him; and I hereby ratify his computations, and agree that the result thereof shall represent my indebtedness to the company, hereby waiving the production of any evidence other than such report and account."

In brief, the effect of the sixth provision is to cast upon the agent the burden of accounting for the premiums upon all policies reported by him to the company; and the seventh provision substitutes, for the ordinary evidence which would be necessary, the hearsay evidence of a third person selected by the company to inspect the condition of the outstanding policies of insurance secured by the defendant Schaefer.

The defendants alleged, and attempted to prove, fraud in the execution of the contract, which issue was not submitted to the jury, and is unnecessary to consider here. It is claimed by the plaintiff that the reception of the evidence of the defendant Schaefer was error; further, that the inspection of the company's agent shows the foregoing amount due, which statement is binding upon the defendants, and that there was no issue to be submitted to the jury; also, that, irrespective of the bond, the ledger of the account of the defendant prior to June 24th constitutes an account stated, which shows conclusively an indebtedness to the company. The last page of the ledger account, dated July 1st, not made by the defendant Schaefer, was offered in evidence, and marked "Plaintiff's Exhibit C." The entire ledger account was not in terms offered in evidence, but was so treated upon the argument; plaintiff's counsel in his brief using the following language: "We submit that, under the proof in this case, each page of this ledger account prior to the last one, dated June 24, the one read on ――――, was an account stated." The attorney for the defendants, upon the argument, commented upon the prior pages of this account, so that I assume all the pages of this account are in evidence. It is also contended by the plaintiff that the evidence of the defendant Schaefer, if admissible, would not be sufficient, for other reasons, that he might be charged with lapses occurring after he left the company's employ. The defendants, in brief, contend that the issue as to whether the defendant Schaefer was indebted to the plaintiff was properly submitted to the jury, and

that its verdict is binding upon this court; that the effect of the cross-examination of the defendant Schaefer was a matter for comment, and for the consideration of the jury simply; and that it cannot be stated, as a matter of law, that the jury should disregard his direct evidence.

The contention of the plaintiff's attorney that there might be an indebtedness, notwithstanding the fact of the payment of the agent to the company of all moneys which he had received, under the provision that he may be charged with all policies lapsed during the continuation of his agency, and within six weeks after the final transfer of his business, has, as it seems to me, no bearing upon this case, because that provision can only apply to any claim which is made for special salary, which is not claimed in this case, and no proof of any such subsequent lapses was made upon the trial. The first two lines of the sixth provision of the bond sued upon provided for giving the defendant Schaefer, each week, credit for the premiums in the lapsed policy register. In other words, he was only held accountable for the policies in force; and there is, as it seems to me, no theory of bookkeeping or of good morals which would charge him with the premiums upon a policy which had ceased to exist, as it is not contemplated in the agreement offered in evidence that the agent is a guarantor of the payment of the premiums of his customers. This, however, does not apply to the agreement with the agent for the special salary, pursuant to provision 13 of the contract in evidence, which is conditioned, with other things, as follows:

"The special salary shall be fifteen times the amount of the net weekly increase of collectible debit in my agency. Net increase of collectible debit is the excess of new business obtained by and credited to me over policies lapsed and charged against me on the books of the company, either during the continuance of my agency, or within six weeks after the official transfer in the books of the company of the business of my agency. * * * Should the debit be decreasing by lapses, or the balance due company be beyond the prescribed limit, the payment of any special salary shall be optional with the company." ·

It was not claimed by plaintiff's attorney upon the argument that the company is entitled, under the last provision, to any credit by reason of lapses, and it was assumed that no question under that provision arose in this case.

The defendant Schaefer, during the period of his agency, delivered to the plaintiff company a weekly account, beginning November 26, 1894, and ending July 1, 1895; but the agent's actual participation in making these statements ended with the account bearing date June 24, 1895, at which time it is claimed by the plaintiff a balance of $29.10 was due the company, which is the amount which appears in the debit item: "Error Debit Note [in printing]. Deficiency by Agt. [in writing]." The learned counsel for the plaintiff earnestly contends that each page of this account constituted an account stated, which could only be impeached for fraud or mistake. These weekly reports were made upon blanks furnished by the company, and contained printed debits and credits, leaving the amounts blank, and some of the forms used in these blanks are difficult to understand; for instance, "Revival Arrears." Does it mean that payments fallen into arrears have been revived by being paid? And

whose payments? Parties insured or the agent? And, again, the term "Premiums Collectible." Does it mean premiums for prior week from all members, or only those considered collectible? If it means premiums from all members, how can the agent be debited with payments in arrears ("Revival Arrears") when he has been debited with all premiums due? Again, the "Debit Advance Payments." Does it mean advanced payments by the agent by his overpaying company, or advanced payments by members? As an interlineation indicates, for the first time on June 10, 1895, these weekly statements were made with the exception of the last, bearing date July 1, 1895, by the witness Boyer, an employé of the plaintiff, upon the report of the defendant Schaefer, and in his presence. How far the defendant Schaefer understood the actual significance of those reports does not very clearly appear, except from the presumption which arises from his participation in making them, and from his opportunity to know just what they contained. Neither does he make any specific explanation that he did not understand them, except what may be inferred from his general evidence that he had turned over to the company all moneys received, to which evidence reference will hereafter be made. These weekly statements are somewhat blind. I am not surprised that Judge Cady remarked, in his charge to the jury upon the trial below, that he did not understand the plaintiff's system of bookkeeping, and expressed his doubt whether any ordinary business man could understand it. In at least two cases, December 24, 1894, and April 1, 1895, there are two accounts for the same week. There arises in these reports a change of terms. The credit space of "Balance Due Company" is used from November 26, 1894, to April 1, 1895, whenever there was such a balance. On April 1, 1895, appears the written term "Deff."; the next week, "Diff."; and next, "Defcy." On May 27th both terms were used, and the amounts opposite each ($16.95, $2.29) are brought forward on June 3d to "Agent's Debit." The second account of April 1st, possibly made to correct the first account of the same date, is not correct, or else the account of April 8th is in error, for the "Deff." account of $33.95 is entered under debits of later date as $28.95. The account of April 22, 1895, had apparently no connection with the prior week or the week succeeding, and the deficiency of April 15th is jumped to April 29th, not appearing under April 22d. On May 20th, for the first time since April 1st, there appears an entry opposite the credit "Balance Due Company"; and on May 29th the last entry opposite this item appears. On July 1st the credit of arrears by members for the first time appears, and has nothing to do with advance payments by members; for persons that paid in advance cannot be in arrears. It is not explained why this credit has not appeared before.

I have examined this weekly statement somewhat in detail, for the purpose of ascertaining the situation of the parties at the time these statements were rendered, to ascertain whether, within the principles applicable thereto, these statements constitute an account stated. I think they do not. An account stated is in substance a new agreement. It has all the elements of an original contract.

There must be a meeting of minds. There must be a consideration. The latter may arise from a relinquishment of further or other demands, and from an implied promise on one side to pay, and on the other side to accept, the amount agreed upon. There must, however, be a meeting of minds.

Mr. Justice Pratt, in Lockwood v. Thorne, 18 N. Y. 288, says:

"The minds of the parties must meet upon the allowance of each item or claim allowed, and upon the disallowance of each item or claim rejected. They must mutually concur upon the final adjustment, and nothing short of this in substance will fix and adjust their respective demands as an account stated."

See, also, the opinion of Mr. Justice Earl in the case of Stenton v. Jerome, 54 N. Y. 484, in which he uses the following language:

"But what is an account stated? It takes two parties to make one,—the debtor and creditor. There must be a mutual agreement between them as to the allowance and disallowance of the respective claims. * * * Their minds must meet as in making other agreements."

It is true that this agreement may be inferred from the circumstances of each case, but can it be said here that the defendant Schaefer's mind met the mind of the plaintiff upon the allowance of each item claimed, or upon the amount of the account of June 24th, assuming that after a careful study of these statements on that day, as a matter of bookkeeping, there was a balance due to the plaintiff of $29.10? Of course, it cannot be claimed that the last report of July 1st, showing a balance of $34.05, has any element of an account stated, not being participated in or assented to by Schaefer. Here are accounts in which the terms used are ambiguous, which contain entries under different accounts of the same debits or credits under different names, where some errors appear, entries allowed in the account of new debits or credits for which no reason is given why they did not appear earlier, where the balance claimed to be due the company does not appear opposite the printed form expressly for that purpose, but has to be spelled, figured out under some other abbreviated entry. The fact that the defendant Schaefer participated in making these reports, and made no specific explanation as to his understanding or misunderstanding, were matters for the consideration of the jury, as was also the intelligence of the defendant Schaefer, and the probability arising therefrom as to his understanding these accounts, and the fact that the figures were made upon the company's blanks and by its agent. The effect of these statements as admissions was for the jury, but cannot be said, as matters of law, to be conclusive upon the defendant. Lockwood v. Thorne, 18 N. Y. 292, opinion by Selden, J. See, also, opinion by Pratt, J., page 287.

Again, the objection that this account is an account stated, and can only be impeached for fraud or mistake, which must be specifically pointed out, was waived by the plaintiff's failure to object upon the ground it was unauthorized by the pleadings. Liscomb v. Agate, 67 Hun, 390, 22 N. Y. Supp. 126.

The defendant Schaefer was asked upon his direct examination:

"Q. Mr. Schaefer, did you ever receive any money on [from] any policyholder, and not turn it over to the Metropolitan Insurance Company? (Ob-

jected to; incompetent, immaterial, not the best evidence, and conclusion of the witness.) A. I turned in every cent I ever collected. Q: Did you ever collect a cent on the policies which you didn't turn over to the company? A. I turned over to the company every cent."

It is claimed by the plaintiff that the admission of this evidence was error, and that no evidence was introduced by the defendant justifying the submission of the case to the jury. An opinion which is an induction from certain given facts is admissible. 1 Whart. Ev. § 15, in which the following illustration is given: "'I saw A. shoot B.' is an induction, the witness not seeing the bullet strike B., but inferring that it did, from the report of the pistol and the wound;" and also cites the case of Sloan v. Railroad Co., 45 N. Y. 125, in which case the plaintiff was injured in a railway collision. Her attendant was asked upon the trial whether she was able to help herself; whether she required assistance. The witness was allowed to answer that the plaintiff was not able to help herself, for the reason that the conclusion was one which was in itself an abbreviation of the facts. Again, at section 510, the same author says: "An inference necessarily involving certain facts may be stated without the facts. * * * Where it may be sustained upon several distinct phases of facts, the facts must be stated. * * * In other words, when the opinion is the mere shorthand rendering of the facts, then the opinion can be given subject to cross-examination as to the facts upon which it is based."

The statement of the witness that he turned over to the company every cent is not only admissible within the foregoing, as necessarily involving the facts, but is itself a fact, that all the money that he collected from the policy holders or the persons insured had been turned over by him to the company. The strength or weakness of this general statement, and how far it was affected by the cross-examination, were matters solely for the jury. The answer of the witness is none the less a fact because it involves a number of transactions. For instance, A. makes deposits in the bank for B. upon 100 different occasions. A. is sued for the alleged conversion of a portion of the money so received. He certainly would be allowed to answer that he always (upon each occasion) deposited the entire amounts given him for that purpose, subject, of course, to cross-examination as to each transaction. The witness would not be permitted to say he paid the company every cent due, any more than upon a trial for murder a witness would be allowed to say that the defendant killed the deceased; but he would be allowed to describe the transaction, the situation, the acts, and the fact of the decedent's death. Such evidence—i. e. of payment—is a conclusion resulting from many facts. The agreement or any modification thereof calls for an interpretation of the contract, as well as the fact of payment itself; but that the witness turned over every cent that he collected is distinctively a fact —one of a chain of facts—from which the conclusion of his indebtedness may be disproved or established, as the case may be. The strength or weakness of this evidence is not a matter of comment at this time. It was solely for the jury. Where there is conflicting evidence, it must be submitted to the jury, notwithstanding that

the preponderance of the evidence is decidedly in favor of one of the parties. Robbins v. Dillaye, 33 Barb. 78; Ayrault v. Chamberlain, Id. 229; Gates v. Brower, 9 N. Y. 205; Gardner v. McEwen, 19 N. Y. 123. It will be intended that a verdict settles in favor of the prevailing party every question of fact litigated upon the trial. Wolf v. Insurance Co., 43 Barb. 400.

The plaintiff cites the case of Owiter v. Insurance Co. (Com. Pl.) 4 Misc. Rep. 543, 24 N. Y. Supp. 731, an action brought by an agent against the company to recover a sum of money deposited as security under a contract precisely similar to the contract in this case. The defendant alleged and proved a counterclaim, although the plaintiff testified with reference to one contract (the Brooklyn contract) "that everything was settled, and that he didn't owe the defendant one cent, and that he was all clear." It was held that the trial justice should have charged that the plaintiff was bound by the statements of the defendant's officers. The defendant in that case based its counterclaim upon the condition as to lapsed policies under the agreement as to a special salary, to which no claim is made in this case. And, again, in that case the evidence given by the defendant as to the amount of plaintiff's indebtedness under one contract (the New York contract) was uncontradicted. For these reasons, I think that case is not in point.

Judgment affirmed, with costs.